[Sac. No. 366. Department One.—May 31, 1898.]

SCADDEN FLAT GOLD MINING COMPANY, Respondent, v. ELIZABETH SCADDEN, Administratrix, etc., et al., Appellants.

TRIAL—DISQUALIFICATION OF JUDGE—INTEREST IN ACTION.—The interest in the action which disqualifies a judge from trying the case is a direct and immediate interest in the result of the action; and where it appears that he had disposed of all the interest he ever had in the property involved in the action, he is not disqualified from sitting and acting therein.

MINING CORPORATION—CONTRACT OF PROMOTERS TO CONVEY—ACCEPTANCE BY CORPORATION.—Where the promoters of a mining corporation agreed to sell and convey certain mining property to the corporation, when formed, and to deliver to it the possession of such property, in consideration of the delivery to them or their order by the corporation of two-thirds of its capital stock, the remaining one-third to be sold for the benefit of the corporation, and the property was delivered to the corporation, which issued two-thirds of the stock to the promoters, and worked the mine, sold the treasury stock, built a mill, and managed and operated the property as owner, the corporation by its acts accepted the proposition of the promoters, and had the

right to enforce the contract against them as trustees of the legal title for the corporation.

ID.—RELATION OF PROMOTERS TO CORPORATION.—The promoters are not the corporation, and their contracts cannot be its contracts, though the promoters become its only stockholders, directors, and officers; but, after it comes into existence, it may, by adopting arrangements made for it in advance, make them its contract, and may thereby become bound to fulfill a contract made in its behalf, in anticipation of its existence, and may acquire a right to enforce such a contract against the other party by his acceptance of performance by the corporation.

ID.—ACTION TO COMPEL CONVEYANCE—STATUTE OF LIMITATIONS.—The statute of limitations does not begin to run against an action by the corporation to compel a conveyance from the promoters while remaining in possession of the property agreed to be conveyed to it by them for a consideration, which has been fully performed on its part.

ID.—RESULTING TRUST DISTINGUISHED—POSSESSION OF BENEFICIARY.—A contract for a conveyance which has been fully performed by the purchaser in possession, constitutes a resulting trust, and differs from a constructive trust, which is forced upon the conscience of the trustee against his will, and generally to prevent the consummation of a fraud; while an express trust differs from a resulting trust only in the manner in which it is proven; but, when proven, a resulting trust is enforced in the same manner as an express trust, and the beneficiary cannot be barred of his right while he is in possession, according to his equitable right.

ID.—ADVERSE CLAIM—CONVEYANCE OF SURFACE RIGHT.—The occupation of a lot by one of the promoters under a deed from the corporation conveying him only the right to the surface, and reserving all rights for mining purposes, was under the title created by it, and could not be adverse, but was an acknowledgment of the ownership and right of the corporation.

ID.—OCCASIONAL WORKING OF MINE BY PROMOTERS—NOTICE TO CORPORATION.—Evidence of an occasional working of the mine by the promoters, after the mill was burned, and the corporators had ceased to work the mine, which working was not brought to the knowledge of the corporation, actual or presumed, there being no proof of a repudiation of the rights of the corporation, by word or act, brought home to it, cannot establish an adverse claim in their favor.

ID.—ACTION AGAINST HEIRS—APPOINTMENT OF RECEIVER TO MAKE CONVEYANCE—DESIGNATION OF OFFICER.—In an action to compel a conveyance from the heirs of a deceased person, many of whom are minors, the court has power to appoint a receiver in whom the legal title may be vested by the decree to make the conveyance, for the purpose of carrying the judgment into effect. A person to execute conveyances ordered by a court of equity is usually designated a "commissioner"; but it is immaterial whether he be called a commissioner or receiver, as his powers and duties are fixed by the decree, and need not be inferred from the name or title of the officer.

APPEAL from a judgment of the Superior Court of Nevada County. John Caldwell, Judge.

The facts are stated in the opinion.

George E. Riley, and Thomas S. Ford, for Appellants.

Fred Searls, and Lindley & Eickhoff, for Respondent.

HAYNES, C.—In 1878 Henry Scadden, Thomas Scadden, and Richard Roberts were the owners of the Scadden Flat Quartz Mine, near Grass Valley, in Nevada county, the interest of each being an undivided one-third. In August of that year a corporation was formed under the name of "Scadden Flat Gold Mining Company," each of said owners and A. B. Brady and John Tremberth being named in the articles of incorporation as the directors to serve for the first year.

It is alleged in the complaint, and found as a fact by the court, that in September, 1878, said Henry Scadden, Thomas Scadden, and Richard Roberts agreed and contracted with said corporation to sell and convey to it the said mining property, and put it in possession thereof, in consideration of the transfer and delivery to them and their order, by the corporation, of forty thousand shares of its capital stock, the whole number of shares being sixty thousand; the remaining twenty thousand shares to be sold for the benefit of the corporation. Of the forty thousand shares, five shares each were to be issued to Brady and Tremberth to qualify them as directors, leaving to each of the Scaddens and Roberts, respectively, thirteen thousand three hundred and thirty shares; and said shares were issued to said persons respectively, and the corporation went into possession of the property. The remaining twenty thousand shares were sold to sundry purchasers, and the corporation realized therefrom fifteen thousand dollars, which was invested in machinery and other improvements upon the property. Active operations were conducted by the corporation upon the mining property for a year or more, during which time over forty thousand dollars were expended in work in the mine and in the erection of a mill. The board of directors met frequently, and directed the operations of the corporation, which were conducted by the superintendent, Roberts,

who reported to the board, of which Henry and Thomas Scadden were members, one of them being president.

Prior to the formation of the corporation, Henry and Thomas Scadden had each mortgaged his respective interest in the mining property, Henry to secure four thousand four hundred dollars, and Thomas for fifteen hundred dollars, which encumbrances existed at the time the corporation was organized.

A deed was prepared for the purpose of conveying said mining property to the corporation, but Roberts refused to execute it until the property should be released from said mortgages. On September 11, 1878, eight thousand shares of stock were issued to Henry Scadden, and these shares were afterward transferred to his mortgagee, and the mortgage was released; and Thomas Scadden also used six thousand six hundred and sixty-six shares of his stock to release the mortgage upon his interest, and the remainder of the stock to which each was entitled was also issued during the same month. The deed, however, was not executed by either of the Scaddens at any time, nor by Roberts until long afterward.

Work was prosecuted by the corporation for a year or more, and was then suspended. The mill was leased to other parties for some months, and not long afterward was destroyed by fire.

Meetings of the board were held from time to time after work ceased until March 3, 1881, but none were held thereafter until September 11, 1895, about which time Roberts conveyed his one-third interest in the property to the corporation.

Henry and Thomas Scadden both died intestate before the commencement of this action, and the defendants are their personal representatives and heirs at law, and the object of the action is to secure a transfer of the legal title to said two-thirds interest in said mining property to the plaintiff. Other facts, so far as material, will be noticed as we proceed.

The findings made by the court are very full, and, it is conceded, support the judgment. The grounds upon which appellants contend for reversal will be noticed in the order in which they are presented.

1. "The judge of the court below was disqualified from trying the case."

All that appears in the transcript upon this point is as follows:

"Mr. Ford [counsel for defendants]: We offer to show by Judge Caldwell that immediately prior to the commencement of the action stock was purchased from him by the Hague syndicate, and that it had no value from 1880 to 1895."

"The Court: I sold the stock; I don't know whether the sale was to Mr. Hague, for I let Mr. Searls have the stock. I do not know what its value was during those years; I only know what I paid and received for it."

From this it is argued that the judge was interested in the result of the action. No objection was made to the court proceeding with the trial, nor was the question raised in any manner in the court below. It may be said, however, that it clearly appears that the judge had no interest in the action. He had disposed of all the interest he ever had in the property. The interest which disqualifies is a direct and immediate interest in the result of the action. (*North Bloomfield etc. Co. v. Keyser*, 58 Cal. 315; *Oakland v. Oakland Water Front Co.*, 118 Cal. 249.)

2. It is insisted that the complaint alleges an express contract for the sale of the property by the Scadden brothers and Roberts to the corporation, and that this allegation is not sustained by the evidence.

The allegation is that said owners "entered into and made an agreement and contract," by which they "agreed and contracted that they would sell and convey and deliver to the plaintiff all the real property aforesaid and the possession thereof in consideration of the delivery to them and their order, by plaintiff, of forty thousand shares of its capital stock; and plaintiff agreed" to deliver said stock in consideration of the sale, conveyance, and delivery of the property to it; and the court found that this allegation was true.

Mr. Brady, the secretary of the corporation, testified that Thomas Scadden, Henry Scadden, and Richard Roberts made an agreement, prior to the formation of the corporation, to convey the property to the corporation when formed, and to receive stock therefor as hereinbefore stated; that they received the stock; that a deed was prepared but was not executed; that Roberts refused to sign it until the mortgages upon the other interests should be removed, and that the corporation worked the mine. The minute-book of the corporation, attested by Henry Scadden

as president, and Mr. Brady as secretary, show an instruction to the secretary to reserve twenty thousand shares to be sold at seventy-five cents per share; that H. Scadden asked consent to have eight thousand shares issued to him, to be placed as security with L. R. Webster on the mortgage held by Webster, and this was done. "Thomas Scadden, having sold one-half of his interest in the above company, asked permission to have said stock issued to J. T. Morgan." The corporation also sold the twenty thousand shares of treasury stock, built a mill, made assessments upon the stock, and managed and operated the property as owner. These facts show that in some manner the corporation was informed of the previous agreement and purpose of the owners of the property, and by its acts, if not otherwise, accepted the proposition of the owners, and such acceptance completed the contract between the former owners and the corporation; and the corporation, having issued and delivered all the stock, and taken possession of the property and operated it, complied with the conditions of the contract upon its part and became the owner of the property, and Henry and Thomas Scadden and Roberts were thereafter simply trustees of the legal title for the corporation.

"The promoters are not the corporation, and their contracts cannot be its contracts. This is so, though the promoters become at the creation of the corporation its only stockholders, directors, and officers. After it comes into existence and operation it may, by adopting arrangements thus made for it in advance, make them its contract precisely as it might make similar contracts had no previous engagements been entered into. There can be no difference between its making a contract by adopting an agreement originally made for it in advance by its promoters and its making an entirely new contract." (*Battelle v. Northwestern etc. Co.*, 37 Minn. 89.)

The supreme court of Massachusetts said: "A corporation may be bound to fulfill a contract made in its name and behalf, in anticipation of its existence, by afterward accepting the benefits of the contract, as it may acquire a right to enforce such a contract against the other party by his acceptance of performance by the corporation." (*Penn Match Co. v. Hapgood*, 141 Mass. 145. See, also, *Chater v. San Francisco Sugar etc. Co.*, 19 Cal.

219, 247.) The contract alleged in the complaint is fully sustained by the evidence.

3. It is also contended that this action is barred by the statute of limitations, or by unreasonable delay in bringing this suit.

Appellants contend that the evidence shows nothing more than a constructive trust; that such a trust is born of fraud, and presupposes an adverse claim from its beginning, and that section 343 of the Code of Civil Procedure, which prescribes a four years' limitation, applies; and that, for the purpose of avoiding that section of the code, an express trust is set forth in the complaint.

In this appellants are mistaken. The complaint alleges an agreement to sell and convey the property to the corporation for a certain quantity of stock, that the stock was delivered, but the conveyance was not executed. This constitutes a resulting trust, and differs from a constructive trust in that the latter is forced upon the conscience of the trustee against his will, and generally to prevent the consummation of a fraud; while an express trust differs from a resulting trust only in the manner in which it is proven; but, when proven, a resulting trust is enforced in the same manner as an express trust. (*Love v. Watkins*, 40 Cal. 547, 568; 6 Am. Rep. 624.) That a purchaser who has paid the purchase price may be barred of an action against the seller to enforce the trust resulting from such transaction is not doubted; but the statute will not begin to run so long as the purchaser is in possession; 'for if it would (as was stated in *Love v. Watkins, supra*), "these curious results must follow: that the equitable owner of land is barred of his right while holding possession according to his right, and without an adverse claim or possession; and a person out of possession acquires title to real estate by the statute of limitations against a person in possession holding adversely. . . . . And I have never yet met with a case, whatever the character of the trust, where the statute has been held to bar the rights of the beneficiary in favor of the trustee, when the beneficiary has continued in possession according to his right, and no adverse claim made by the trustee. Such a case would be at variance with the fundamental idea of statutes of limitation that possession draws to it, or rather extinguishes, all adverse claims and titles."

The court found that the plaintiff, in September, 1878, entered into full possession of the property and has held and retained possession of it from that time, and has never been dispossessed, and has every year since 1878 paid the taxes assessed thereon.

It is contended that the finding that plaintiff has been in possession ever since 1878 is not justified by the evidence. There is some conflict in the evidence upon this point, but I think there is sufficient to sustain the finding.

In the finding that plaintiff has had possession ever since 1878 there is an exception of a small portion of the surface, a lot of about one hundred and thirty by two hundred and twenty feet, which was conveyed by the corporation to Thomas Scadden on May 6, 1889, the deed conveying only the right to the surface, and reserving all rights for mining purposes. This deed was recorded at the request of Thomas Scadden a few days thereafter.

The occupation of this lot, which was fully described, was under the title created by it, and could not be adverse, but, on the contrary, was an acknowledgment of the ownership and right of the corporation.

After the mill was burned but little work was done in the mine. Mr. Morgan testified that in recent years the mine was worked by some parties whose names he did not remember; that a man named Pierce worked as a tributer and paid a percentage to the corporation; that the witness had the shaft repaired five or six years ago. There was also evidence that some of the Scadden boys worked there occasionally for short spaces of time when not employed elsewhere, and accounted to their father; but the court found that plaintiff had no actual notice thereof, and that the work done was so limited that plaintiff could not be presumed to have had knowledge of it. But there is no evidence of any repudiation of the rights of the corporation by word or act brought home to it.

In *Luco v. De Toro*, 91 Cal. 416, 417, it was said: "Time begins to run against a trust only from the time it is openly disavowed by the trustee, and the adverse claim is clearly and unequivocally made known to the *cestui que trust*. . . . . Full performance by Hartman created an indefeasible estate in equity, which could not be defeated or divested by Olivera without pos-

itive and unequivocal repudiation of the trust relation, and notice of such repudiation to the beneficiary."

Mere neglect of the trustee to convey, or of the *cestui que trust* to demand or compel the conveyance, as in this case, is not sufficient to bar the right of the purchaser to compel a conveyance.

The court, owing to the difficulty of compelling the defendants, who were numerous, and many of whom were minors, to execute a conveyance to the plaintiff, appointed a receiver, in whom the legal title was vested by the decree, to make the conveyance; and this, it is argued, was erroneous.

Section 564 of the Code of Civil Procedure authorizes the court to appoint a receiver: "3. After judgment, to carry the judgment into effect," and appellants suppose the appointment of a receiver was made thereunder.

This provision is very comprehensive, and we see no reason why the mode here adopted is not proper. Where the means to carry into effect the jurisdiction of the court is not specifically pointed out by the code or statute, "any suitable process or mode of proceeding may be adopted which may be conformable to the spirit of this code." (Code Civ. Proc., sec. 187.) A person to execute conveyances ordered by a court of equity is frequently appointed, and is usually designated a "commissioner"; but we think it immaterial whether he be called a commissioner or a receiver—since his powers and duties are fixed by the decree, and need not be inferred from the name or title of the officer.

The judgment appealed from should be affirmed.

Belcher, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Garoutte, J., Harrison, J., Van Fleet, J.

Hearing in Bank denied.