*517 OPINION.
Van Fossan:
The first issue in these proceedings is whether a profit of $204,002 accrued to the petitioners, Ackerman and Harris as individuals, from an exchange of certain contractual interests on June 5, 1922, with Loew’s Incorporated for the stock of 15 corporations operating various theatrical enterprises, or, to state the question in the words of respondent’s brief:
Did the petitioners, who were partners, sell or surrender their rights under certain existing contracts to Loew’s Incorporated in 1922 at a profit of $204,002, thereby deriving taxable income, or did they- assign such rights to Ackerman & Harris, Inc., in exchange for its entire capital stock in a non-taxable transaction?
The evidence leads us to the conclusion that petitioners had assigned their rights under the contracts in question to Ackerman and Harris, Inc., prior to the execution of the subsequent contract of exchange dated June 5, 1922, which respondent contends gave rise to the profit in question. Moreover, at the time the contract of June 5, 1922, was prepared and presented to the petitioner, Acker-man, the president and secretary of Loew’s Incorporated were fully aware that the petitioners were no longer the real owners of the rights and interests which they agreed to convey and that they had sold and assigned all such right to Ackerman and Harris, Inc. Under the law of the State of California the assignment made by the petitioners on May 11, 1922, though made prior to the formation of the corporation, constituted, upon incorporation, a valid conveyance of such rights and interest. Scadden Flat Gold Mining Co. v. Scadden, 121 Cal. 33; 53 Pac. 440; Garretson v. Pacific Crude Oil Co., 146 Cal. 184; 79 Pac. 838.
Loew’s Incorporated insisted on the petitioners’ individual liabilty for carrying out the contract in order to be assured that certain vaudeville contracts would be fulfilled and for the further reason that they well knew their individual responsibility.
The evidence discloses, however, that all transactions pursuant to the June 5,1922, contract were carried on with Ackerman and Harris, Inc. The stock certificates of the 15 corporations were transferred directly to that corporation. After that date the petitioners in no instance acted in their individual capacity in the management or operation of the various theatrical enterprises in which they were interested. Their withdrawal as individuals was further recognized and assured by the cancellation of their contract with the Marcus Loew Booking Agency, a subsidiary of Loew’s Incorporated. The practical effect *518 of and intention behind the contract were to make petitioners guarantors of its performance.
Therefore, regardless of what may have been the legal effect or consequences among the parties of the action of Ackerman and Harris in signing the contract of June 5, 1922, individually and agreeing to convey something they did not own, the fact is the petitioners never received the stock which respondent held represented income to them, nor was it received by the corporation on petitioners’ behalf. It was transferred directly by Loew’s Incorporated to Ackerman and Harris, Inc. — was held by the corporation, and on later sale of the larger part of it the corporation received the proceeds and accounted for the gain. The individual taxpayers here petitioning, whose returns were made on a cash basis, received nothing in 1922 which gave rise to profit.
With reference to the second issue, relating solely to Ackerman, the evidence is convincing that the petitioner established the Hum-berstone Dog Kennels as a business enterprise and so operated them during the years under consideration. The sole issue presented at the hearing is whether or not the petitioner was engaged in the transaction as a business or a hobby. The deductions should be allowed. George D. Widener, 8 B. T. A. 651; Margaret E. Amory, 22 B. T. A. 1398.

Judgment will be entered under Bule SO.