**HELVERING, Commissioner of Internal Revenue, v. ACKERMAN.**

**No. 7273.**

Circuit Court of Appeals, Ninth Circuit.

June 15, 1934.

Sewall Key and John G. Remey, Sp. Assts. to Atty. Gen., for petitioner.

A. S. Newburgh and A. L. Weil, both of San Francisco, Cal., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

This case involves income taxes for the years 1922, 1924, 1925, and 1926. The questions to be decided can best be treated separately in their entirety, as follows: (1) The profit which was realized upon the transfer of certain stock to Ackerman & Harris, Inc., a corporation; (2) losses alleged to have been sustained in the dog breeding business.

(1) Prior to November 5, 1919, respondent Ackerman and one Harris, copartners, were operating a theatrical booking agency. On the last-mentioned date, the partners entered into two agreements with Loew's, Inc., by the terms of which agreements the partners were to receive a one-fourth interest in a theatre and office building to be constructed and operated by Loew's, Inc., in San Francisco, and a like interest in another theatre and office building to be erected in Los Angeles.

On the same date, the partners entered into a contract with the Marcus Loew Booking Agency (a subsidiary of Loew's, Inc.) whereby they transferred their booking agency to the latter agency and were by it employed as managers of its San Francisco branch at $15,000 a year for eight years, and were given the right to purchase and acquire a 25 per cent. interest in western theatrical ventures of Loew's, Inc.

May 11, 1922, the partners agreed with one Marcus and one Slater—who were acting for a corporation to be formed and to be known as Ackerman & Harris, Inc.,—to assign their rights in the two aforementioned contracts of November 5, 1919 (more specifically, the San Francisco and Los Angeles theatre and office building contracts with Loew's, Inc.) to Ackerman & Harris, Inc., in consideration for which assignment the partners were to receive all of the stock of Ackerman & Harris, Inc., except qualifying shares, which stock was to be transferred as soon as incorporation of the new company was accomplished and the necessary permit for the issuance of its stock was obtained. May 29, 1922, the articles of incorporation of Ackerman & Harris, Inc., were duly filed as required by the laws of California; the company being organized for the purpose of acting as a holding company, "and more particularly, to take over that certain contract dated November 5th, 1919, between Loew's, Incorporated, party of the first part, and Irving C. Ackerman and Sam Harris, copartners do-

ing business under the firm name and style of Ackerman & Harris, parties of the second part. * * * " May 31, 1922, at the first meeting of the board of directors of Ackerman & Harris, Inc., the corporation accepted the assignment from the partners of the contracts in question, with Loew's, Inc., and authorized the issuance of its stock to the partners, as agreed. The stock was issued in December, 1922.

May 31, 1922, the partners were appointed attorneys in fact for Ackerman & Harris, Inc., and authorized to negotiate with Loew's, Inc., for the purpose of securing for Ackerman & Harris, Inc., the stock of certain subsidiary corporations of Loew's, Inc., in exchange for Ackerman & Harris', Inc., interest in the contracts of November 5, 1919 (theretofore assigned to Ackerman & Harris, Inc., by the partners, as hereinabove recited).

Pursuant to the foregoing authorization and direction, the partners, on June 5, 1922, contracted with Loew's, Inc., to transfer to the latter the interest of Ackerman & Harris, Inc., in the two contracts of November 5, 1919, in exchange for certain stock in subsidiary companies of Loew's, Inc., of the value of $204,002. Because Loew's, Inc., refused to deal with Ackerman & Harris, Inc., the contract was executed between Loew's, Inc., and the partners, as individuals. The contract contained the following covenant: "The Purchasers for themselves and their legal representatives, warant that they have in no way assigned, pledged or hypothecated the rights, interests and claims granted to them under the aforementioned agreements of November 5th, 1919 * * * and that they are the sole and absolute owners of all the rights, benefits, claims and privileges granted by the Seller herein under and by virtue of the said agreements aforementioned."

The contract also contained the following provision: "This agreement may be assigned by the purchasers to a California corporation known as 'Ackerman & Harris, Inc.' of which the purchasers own a majority of the capital stock, but the Purchasers, shall nevertheless, continue to remain liable to the Seller as though the assignment had not been made."

The contract of June 5, 1922, with Loew's, Inc., whereby the latter parted with certain stock of its subsidiaries, also canceled the contract of employment between the partners and the Marcus Loew Booking Agency, referred to hereinabove.

Pursuant to the contract of exchange of June 5, 1922, Loew's, Inc., transferred the stock of its subsidiary companies (theatres) to Ackerman & Harris, Inc., and the stock was reissued to the latter by the respective companies. The partners received none of the stock individually. The books of Ackerman & Harris, Inc., reflected the issuance of its stock to the partners in exchange for their rights and interests in the two contracts of November 5, 1919 (with Loew's, Inc.), and also the transactions arising out of the contract of exchange of June 5, 1922, with Loew's, Inc. Ackerman & Harris, Inc., later sold the stock acquired by it in certain of the theatres and reported profits thereon in its income tax returns. Ackerman & Harris, Inc., also assumed the performance of all conditions and covenants of the contract of exchange of June 5, 1922, for which the partners were liable.

The Commissioner held that the stock of the several theatres transferred by Loew's, Inc., to Ackerman & Harris, Inc., had a value of $204,002 and that all of the same represented profit to the partners individually. The Board of Tax Appeals reversed the ruling of the Commissioner and held that the partners "never received the stock which respondent [Commissioner] held represented income to them, nor was it received by the corporation on petitioners' [the partners'] behalf. It was transferred directly by Loew's Incorporated to Ackerman and Harris, Inc. —was held by the corporation, and on later sale of the larger part of it the corporation received the proceeds and accounted for the gain. The individual taxpayers here petitioning, whose returns were made on a cash basis, received nothing in 1922 which gave rise to profit." 24 B. T. A. 512.

On this appeal, "Petitioner contends that the sale or exchange [of the contracts of November 5, 1919, above referred to] was made by Messrs. Ackerman and Harris, and not by Ackerman & Harris, Inc., and that they and not the corporation derived a taxable profit from the transaction." In other words, petitioner contends that before any assignment to Ackerman & Harris, Inc., of the contracts of November 5, 1919, was effected, the partners sold their interest in those contracts to Loew's, Inc., "and that thereupon they assigned the contract by which such sale had been made, together with the proceeds of the sale, to Ackerman & Harris, Inc."

The record does not support this contention, but, on the contrary, is to the effect that prior to the contract of exchange of June 5, 1922, with Loew's, Inc., the partners had as-

signed to Ackerman & Harris, Inc., all of their interest in the contracts of November 5, 1919, with Loew's, Inc. Respondent Ackerman testified as follows:

"Q. I will ask you why that agreement was made in the name of Ackerman and Harris, a co-partnership, when the evidence already introduced here indicated that Ackerman and Harris had transferred this contract to Ackerman and Harris, a corporation? A. Mr. Loew, the President of Loew's, Incorporated, wired me to come to New York along with Mr. Harris; that he was. at that time in considerable difficulty by reason of losses in numerous theatres; wired me to come to New York along with Mr. Harris, and I might explain that at that time Mr. Harris and I were the Western representatives of Loew's, Incorporated, and had previously sold to Loew's, Incorporated, various theatrical enterprises which we had in the West. We went to New York and Mr. Loew asked if it were possible to make an arrangement whereby we would acquire the interests in these various corporations operating in the West; said that he was not desirous of operating theatrical enterprises in the West any longer, outside of two situations. The two situations were one house in Los Angeles and one house in San Francisco. Mr. Harris and I went to Mr. Loew's home and after several conferences we decided to make a deal with him. I explained to Mr. Loew and to Mr. Leopold Friedman, the Secretary of Loew's, Incorporated, and the attorney for Loew's, Incorporated, who were present at all the conferences, that Mr. Harris and myself as co-partners or as individuals were no longer the owners of the two agreements.

"I told Mr. Loew that prior to leaving California, Mr. Harris and I, as individuals and as co-partners, had transferred our interest in the San Francisco proposition and the Los Angeles proposition to a corporation which we had organized, called Ackerman & Harris, Incorporated. We agreed in behalf of Ackerman & Harris to trade the agreements, these two agreements, or to surrender these two agreements. When it came to drawing the contract I was present with Mr. Friedman (the attorney for Loew's, Incorporated) who dictated the contract. I said, 'This contract is to be between Ackerman & Harris, Incorporated, and Loew's, Incorporated,' and Mr. Friedman refused to do it for the reason as he explained. He said: 'This agreement provides that you will take care of contract of vaudeville acts traveling over the circuit, which contract runs up into hundreds and thousands of dollars. I want

to know if these acts are to be played or payed for. I do not know anything about the corporation, I know Ackerman & Harris as individuals and as co-partners, with whom we have done business for several years. You are our Western representatives. If you will agree to this, we will put through the deal.' I explained to him that we had formed this corporation, and it was now the owner of the two interests which were being traded back. But he refused to deal with the corporation and insisted on dealing with the partnership and so we drew the contract that way. The shares of the various corporations that were transferred by Loew's, Incorporated, in consideration of the transfer were transferred to Ackerman & Harris, Incorporated. * * * Neither I nor Mr. Harris as individuals received any of said stocks, or the proceeds from the sales of any of said stocks. After some of these stocks were disposed of, Ackerman & Harris reported the disposition thereof and the profit thereon in its income tax returns for the year which was involved, and the taxes on the profits were paid by Ackerman & Harris, Inc."

A bookkeeper for Ackerman & Harris, Inc., also testified that the latter corporation received the stock from Loew's, Inc., and that "some of these stocks were subsequently disposed of by Ackerman & Harris, Incorporated, and Ackerman & Harris, Incorporated, accounted for the profits which they received on distribution of these stocks."

We agree with the Board of Tax Appeals, that: "The evidence leads us to the conclusion that petitioners had assigned their rights under the contracts in question to Ackerman and Harris, Inc., prior to the execution of the subsequent contract of exchange dated June 5, 1922, which respondent contends gave rise to the profit in question."

As said by the Board in its opinion, "At the time the contract of June 5, 1922, was prepared and presented to the petitioner, Ackerman, the president and secretary of Loew's Incorporated were fully aware that the petitioners were no longer the real owners of the rights and interests which they agreed to convey and that they had sold and assigned all such right to Ackerman and Harris, Inc."

We are of opinion that the Board correctly decided that the stock in question was transferred directly to Ackerman & Harris, Inc., and not to Ackerman and Harris as partners, or individuals, and that the taxable income realized upon the transaction is taxable to the corporation and not to the partners.

■ There is an assignment of error that: "The Board, erred * * * in holding that under the law * * * of California the alleged assignment made by said Ackerman and Harris on May 11, 1922, though made prior to incorporation, constituted upon incorporation a valid conveyance of the rights and interests described therein; and further erred in failing to hold that under the law of California such attempted assignment did not operate to transfer title to any property or rights until the proposed corporation was both created and authorized by law to accept such transfer and to issue its capital stock as consideration, therefor."

This assignment is not set forth in the specifications of error in the brief, nor is it argued therein. In any event, we think it is without merit. It is disposed of in the opinion of the Board as follows: "Under the law of the State of California the assignment made by the petitioners on May 11, 1922, though made prior to the formation of the corporation, constituted, upon incorporation, a valid conveyance of such rights and interest. Scadden Flat Gold-Mining Co. v. Scadden, 121 Cal. 33, 53 P. 440; Garretson v. Pacific Crude Oil Co., 146 Cal. 184, 79 P. 838."

■ Petitioner also contends that the Board erred in this: "For the further reason that the personal-service contract entered into between the partners and Loew's Booking Agency was not transferable and was, in fact, never assigned to Ackerman & Harris, Inc. On the other hand, the contract which the partners made with Loew's, Incorporated, on June 5, 1922, not only transferred all rights under the two theater contracts but released and canceled said personal contract as well. Consequently, at best, only the sale of the two theater contracts could have been made for the account of Ackerman & Harris, Inc. But the evidence fails to disclose what portion of the total consideration paid is allocable to the cancellation of the personal service contract. It was incumbent upon the partners to segregate that portion of the consideration which obviously represented income to them from the portion which did not."

So far as the record discloses, this question was not raised before the Board of Tax Appeals; nor is it set forth in petitioner's specifications of error in the brief. However, it may well be that the Board took the matter into consideration and concluded that the cancellation of the employment contract in question formed no material part of the total consideration paid. Under the circumstances, we do not feel justified in disturbing the decision as rendered. Phillips v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289.

■ (2) Respondent Ackerman deducted from income in the years 1922, 1924, 1925, and 1926 losses alleged to have resulted from his operation of the Humberstone Dog Kennels, in San Francisco, from 1920 to 1928. The Board allowed the deductions as claimed. Petitioner contends that this was error, because respondent failed to prove the amount of losses sustained. It is argued that the testimony of respondent in support of his alleged loss for the year 1922 is insufficient, and that there is no evidence at all of any losses in the other years. It is true that the evidence in this respect is very meager and unsatisfactory, but it cannot be said that there is no evidence. In his petitions to the Board of Tax Appeals for review of the determinations of the Commissioner disallowing the losses, respondent sets forth tables for the various years showing inventory values and income from sales and service fees, from which is deducted expenses of wages, feeding, exhibiting, etc., and depreciation and deaths. The Board was of opinion that the losses claimed were sufficiently established, and that the only issue was "whether or not the petitioner [respondent] was engaged in the transaction as a business or a hobby," and held that "the evidence is convincing that the petitioner established the Humberstone Dog Kennels as a business enterprise and so operated them during the years under consideration." We see no reason why we should disturb this finding. It is supported by substantial evidence, and must, therefore, be sustained. Phillips v. Commissioner, supra, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289.

Affirmed.