## COMMISSIONER OF INTERNAL REVENUE v. GERARD.

### No. 7528.

Circuit Court of Appeals, Ninth Circuit.

Feb. 18, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, S. Dee Hanson, and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., for petitioner.

John A. Fleming, George Bouchard, and George H. Koster, all of Los Angeles, Cal. (L. A. Luce, of Washington, D. C., of counsel), for respondent.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

CAVANAH, District Judge.

This appeal by the Commissioner of Internal Revenue involves the liability of respondent as a transferee under section 280 of the Revenue Act of 1926 (26 USCA § 1069 and note), with respect to a deficiency in income taxes imposed on Barham Well No. 1, an association, for the taxable year 1923. The Commissioner notified respondent that he had determined the deficiency against him as a transferee of the well, and respondent appealed from the order to the Board of Tax Appeals, contending that the Commissioner erred in holding (a) that the well was an association taxable as a corporation; (b) that respondent was a transferee of the well within the meaning of the Revenue Act, and (c) that the assessment and collection of the tax from him was barred by the statute of limitations. The Board, redetermined that respondent was not liable for the taxes imposed against him as a transferee of the well and therefore deemed it unnecessary to decide whether the assessment was barred by the statute of limitations. The Commissioner appeals from the final order of the Board and contends that his ruling should be sustained, which presents the question: Is respondent liable as a transferee, under section 280 of the Revenue Act of 1926, for the deficiency in income taxes for the year 1923 imposed on the well, an association taxable as a corporation?

The question is one of fact as to whether respondent, as a taxpayer, sold the units evidencing his interest in the association known as Barham Well No. 1, which is considered for income tax purposes as a corporation, or whether Barham Well No. 1, an association, sold its assets and then distributed the proceeds from the sale to respondent as a distribution in liquidation. The Board found the fact to be that respondent sold his unit interest in the corporation and that the money which he received was received by him as the sales price of his units.

It may fairly be stated that the evidence shows that Walter B. Barham acquired a lease on the oil land wherein the well in question was sunk, and being without sufficient funds to carry out the project, he sold a number of shares of beneficial interest in the prospective production of oil to respondent and others who were to bear a proportion of the expenses. They selected certain of their number to have charge of the well and by so doing became an association taxable as a corporation. Under the contract of purchase of these interests, Barham was authorized to sell the oil produced from the well, and the Farmers' & Merchants' National Bank of Los Angeles was authorized to receive the money due respondent and the others from the sale of the oil and to distribute to each of the unit holders of interest in the well his proportionate share of the money. The management of the well was by Barham, and during the year 1922, when it was being drilled, he reported as to progress being made, which was sent to the interest holders: In the latter part of 1925, or in 1926, Barham sold his interest in the oil well business and thereafter had no connection with it. In 1923 five persons were designated as trustees of the well, and in December, 1926, they ascertained that water had gotten into the well, and as a result the question of selling it was discussed by them. Thereafter, in January, 1927, the trustees called a meeting of the unit holders for the purpose of disposing of their holdings, as it appeared to them to be impossible to operate the well at a profit. At the meeting, 85 per cent. of the unit holders authorized the trustees to dispose of the well. The best proposition made to them was by the Olympic Refining Company, proposing to purchase all or any part of the units of ownership of the well then outstanding at $10 per unit, payable in cash, effective at midnight February 28, 1927; the total number of units issued and outstanding being 2,000. The offer reserved to the trustees the right to retain all money on hand as well as what might be received from the production from all oil and gas to that date. The offer was accepted and the Olympic Refining Company took possession of the well. On March 9, 1927, the trustees informed the unit holders of the well of the sale to the Olympic Refining Company, stating that the company had deposited $20,000 in escrow with the Farmers' & Merchants' National Bank and that it was being paid out at $10 per unit when the certificates were received. They were also informed that they would participate in a pro rata distribution of the money on hand, which amounted to $1.70

per unit. The offer was accepted by all of the unit holders excepting two; one owning five units, and the other one unit. After those steps were taken the trustees sent out reports to the unit holders, stating that the reports covered the sale of their holdings to the Olympic Refining Company and gave a statement of the financial condition of the well to date; that they were complete reports of all conditions, receipts, and expenditures and closed the affairs of Barham Well No. 1. The $1.70 per unit or interest share was distributed to the unit holders. Barham Well No. 1 had no charter, nor by-laws, nor shares of stock, nor certificates of interest other than the contracts evidencing the interest of unit holders in the oil production from the well.

The offer of the Olympic Refining Company was addressed to the individual unit holders and not to the trustees or the Barham Well No. 1, and proposed to purchase from them their shares of interest in the property. It states that:

"The undersigned Olympic Refining Company hereby agrees to purchase all or any part of the units of ownership of the above property now outstanding at $10.00 per unit; payable in cash, it being understood and agreed that the total number of units issued and outstanding is two thousand.

"This offer is being made to the individual unit holders and the units will be accepted and paid for upon presentation, at the above office."

The shares were taken up from the individuals holding them, and not from the trustees or the association. After the Olympic Refining Company paid $19,940.00 for 1,994 units, the Barham Well No. 1 continued to exist and it held assets consisting of a producing well, casting, derrick, and building equipment, etc., of a value in excess of the amount of the tax assessed against it. Nothing appears that there was ever a liquidation of the association or a distribution of its assets. The operation of the well did not cease. After the transaction, the unit holders in the Barham Well No. 1 were the Olympic Refining Company holding 1,994 units and others holding six

units who did not sell their units to the Olympic Refining Company.

These facts were found to exist by the Board, and from them we are first confronted with the rule of law that, if the findings of the Board are supported by any substantial evidence, they are conclusive and will not be disturbed. Phillips v. Commissioner, 283 U. S. 589, 599, 51 S. Ct. 608, 75 L. Ed. 1289; Old Mission P. Cement Co. v. Commissioner (C. C. A. 9) 69 F.(2d) 676, 679; Helvering v. Ackerman (C. C. A. 9) 71 F.(2d) 586, 589; Benjamin v. Commissioner (C. C. A. 2) 70 F.(2d) 719; Boston Safe Deposit & Trust Co. v. Commissioner (C. C. A. 1) 66 F.(2d) 179; Sacks v. Commissioner (C. C. A. 4) 66 F.(2d) 308.

No doubt exists but what the Barham Well No. 1 comes within the classification of an association taxable as a corporation, and from a study of the evidence the transaction was merely an assignment by certain individual unit holders in the well to the Olympic Refining Company of their right to receive further profits, if any realized from oil production from the well. The negotiations and consummation of the deal was a purchase of the shares and constituted a sale by those unit holders who accepted the offer of interest in the well with no resulting liability, and was not a sale of the assets of the well upon which taxable income was realized by the association. There remained assets in the association, such as money derived from the sale of oil to February 28, 1927, and property referred to in the Barham Well No. 1, after the sale of the 1,994 units to the Olympic Refining Company. Therefore, under such circumstances and the evidence disclosed by the record, respondent is not liable as a transferee under section 280 of the Revenue Act of 1926 for the deficiency in question, of $10 per unit which he received from Olympic Refining Company, but is liable as transferee for $1.70 per unit distributed to him by the association, and which is not barred by the statute of limitation.

In view of the conclusion thus reached, the decision of the Board will be affirmed, with the modification that respondent is liable for the $1.70 per unit distributed to him by the association.