JAMES AND FRANCIA COE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coe v. Commissioner
Docket No. 1289-72
United States Tax Court
T.C. Memo 1974-129; 1974 Tax Ct. Memo LEXIS 190; 33 T.C.M. (CCH) 592; T.C.M. (RIA) 74129; May 15, 1974, Filed. Towner Leeper, for the petitioners. Thomas J. Miller, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent has determined deficiencies in the Federal income taxes of petitioners for the designated years in the following amounts: Year
Deficiency 1968
$5,891.63
1969
5,403.00
1970 [1]
4,460.92
The issues presented for decision are (1) whether the horse activities conducted by Francia Coe in 1968 and 1969 constituted a trade or business entered into for profit, so that the expenses attributable thereto are deductible, *191 and (2) whether the loss on the sale of the horse, High Pressure, by petitioners in 1968 should be treated as a nondeductible loss on the sale of a personal asset. The second issue is completely dependent on the first. If we find that petitioners' horse activities were conducted as a trade or business, then the loss claimed as a result of the sale of the horse is deductible. If on the other hand we find that the horse activity was personal in nature, then the horse is a personal asset and the loss claimed as a result of the sale of that asset is nondeductible. FINDINGS OF FACT some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. The petitioners, James Coe and Francia Coe (Francia), are husband and wife who maintained their residence in El Paso, Texas, when the petition herein was filed. They filed joint Federal income tax returns for the calendar years 1968 and 1969 with the internal revenue service center at Austin, Texas. Any reference to "petitioner" hereinafter shall be deemed to mean Francia. The activity in question before us is that of raising and *192 breeding American saddle bred horses. This is a particular breed of horse known for its distinctive gaits and is used almost exclusively for exhibition in horse shows. Petitioner first became interested in American saddle bred horses in 1951, at the age of 12. At this time she acquired her first American saddle bred, a mare named Rose Ann's Genuis, for $2500. Two years later, after showing Ross Ann's Genius extensively in the southwestern United States, she was offered $10,000 for the mare. This offer was turned down and Francia continued to exhibit the horse in various shows. In 1960 petitioner purchased another mare, Silver Fern, for $750 as a yearling. Subsequently, Francia had the horse properly trained and began exhibiting her. During, or just prior to, 1964 an offer was made to petitioner for purchase of Silver Fern for the amount of $35,000 which she likewise turned down. It was about this time that petitioner realized the great profit potential in raising and breeding American saddle bred horses and decided to merge what had previously been a solely personal endeavor on her part into what she hoped would be a profitable business venture. It was with this thought in *193 mind that petitioner turned down the purchase offer for Silver Fern in favor of continuing to exhibit the animal in the hopes of establishing the horse's record as a show horse. The idea behind this action was that of eventually retiring Silver Fern to breed and then selling her colts for what Francia hoped would be the market price of $2,500 each. Petitioner subsequently became owner of several other horses summarized as follows: Name
Sex
Purchased
Amount
Ownership All Glory
mare
1/1/64/
-
Still owned
Silver Fern
mare
1960
$750.00
Still owned
Charlamine
mare
1964
$10,500.00
Sold 1966 for $15,000.00
Colonial Silver (1/2 interest)
gelding
after 1970
-
Sold
Silver Service
gelding
4/30/67
$1,500.00
Still owned
Draper Dan
gelding
11/20/66
$2,500.00
Sold 1972 for $5,000.00
El Dorado (1/2 interest)
gelding
1970
$1,500.00
Still owned
High Pressure
gelding
1966
$7,300.00
Sold 1968 for $2,300.00
At all times since 1964, petitioner has boarded her horses with qualified trainers. During the years in issue, petitioner kept her horses in Granview, Missouri, a location considered to be the center of the American saddle bred *194 industry due to its proximity to the top stud horses available at the time. The horses were boarded with Charlie Judd (Judd) a professional trainer. As trainer of petitioner's horses, Judd's duties consisted of training the horses, maintaining the proper equipment and transporting the horses to and from the various shows. Judd was aware of petitioner's business plans and helped her purchase horses with the outward look of eventually having some good producing brood mares in the years to come. Success in exhibiting at shows is the crux of the American saddle bred business, therefore petitioner made sure that her horses competed extensively in the various horse shows. Often times Judd would himself, rather than petitioner, exhibit the horses to add a touch of professionalism and to increase the likelihood of success in the shows, thereby increasing the potential value of the horses. Petitioner kept the records of her horse breeding and raising activity. Since 1964 she has kept a separate set of books and a separate bank account solely for her horse operation. As a result, the reconstruction of the income and expenditures of the operation were readily available. For the *195 years 1964 to 1970 petitioner had income from the breeding and raising of American saddle bred horses as follows: 1964
1965
1966
1967
1968
1969
1970 Shows:
$1,240.00
$3,005.00
$385.00
$1,140.00
$750.00
$905.00
$175.00
Gain on Charlamine sale:
$4,968.75
The expenditures attributable to the horse operation for the years 1964 to 1970 are as follows: 1964
1965
1966
1967
1968
1969
1970 Depreciation
$1,375.00
$2,031.25
$1,671.88
$1,828.13
$1,707.30
$948.00
$ 1,260.00
Insurance
278.00
-
-
-
-
-
-
Travel
1,336.25
920.64
2,361.22
2,343.57
3,654.58
2,047.00
831.10
Dues, Subscription, advertising
628.48
92.50
601.56
613.50
340.00
-
16.00
Blacksmith
30.00
143.00
-
-
-
-
-
Trainers
7,725.79
7,942.50
7,646.66
6,684.88
7,559.27
8,337.00
7,473.26
Equipment and rental
60.10
42.99
-
-
-
-
-
Fee & Supplies
-
653.57
-
-
-
562.00
521.00
Vet
-
197.95
-
107.00
57.00
-
89.70
Hauling
-
-
-
1,110.56
593.00
-
-
Fees
-
-
-
357.50
430.75
991.00
60.50
Stud Fees
-
-
-
-
-
600.00
During the year 1968, petitioner *196 sold the horse named High Pressure. A loss resulted from this sale in the amount of $2,414.58, and this loss was treated by petitioners on their Federal income tax return as a capital loss. Petitioner, according to plan, began breeding the mare Silver Fern in 1969. At the time of trial the horse had produced one colt that died at the age of six weeks, another colt which was one year old and a third colt on the way. Pursuant to petitioners' belief that their breeding and raising of American saddle bred horses constituted a trade or business under the appropriate sections of the Internal Revenue Code of 1954, petitioners claimed losses in the years 1968, 1969 and 1970 attributable to their horse operation in the amounts of $13,991.90, $12,580.00 and $10,077.60, respectively. Additionally, as previously indicated, petitioners claimed a capital loss on the sale in 1968 of the horse named High Pressure. Respondent, in his statutory notice of deficiency dated January 11, 1972, determined that the losses claimed by petitioners to have been incurred in the horse operation were not incurred in a trade or business but rather constituted nondeductible personal expenditures. [2] Additionally, *197 respondent disallowed the loss claimed on the sale of High Pressure in 1968, determining that the loss was nondeductible, resulting from the sale of a personal asset. ULTIMATE FINDING OF FACT Petitioners' losses in 1968 and 1969 attributable to their breeding and raising American saddle bred horses are deductible losses incurred in a trade or business. Accordingly, the loss on the sale of High Pressure in 1968 was not incurred as the result of the sale of a personal asset and may be claimed by the petitioners. [3]
OPINION The question for decision is whether petitioners' horse operation constituted a trade or business as that term is used in the appropriate sections of the Internal Revenue Code of 1954. [4]
*198 It is well established that breeding, racing, showing and raising horses for sale may constitute a trade or business. Commissioner v. Widener, 33 F.2d 833 (C.A. 3, 1929), affirming 8 B.T.A. 651 (1927); Wilson v. Eisner 282 Fed. 38 (C.A. 2, 1922).However, whether such activity constitutes a trade or business in the particular circumstances of each case is determined by whether the taxpayer engaged in the venture with the intention to operate for the purpose of making a profit. Schley v. Commissioner, 375 F.2d 747 (C.A. 2, 1967), affirming a Memorandum Opinion of this Court; Lamont v. Commissioner, 339 F.2d 377 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court. The expectation of making a profit need not be a reasonable one, but the taxpayer must show that the expectation was in fact genuine. Margit Sigray Bessenyey, 45 T.C. 261 (1965), aff'd 379 F.2d 252 (C.A. 2, 1967). The issue presented is essentially one of fact and the burden of proof rests with petitioners. Theodore Sabelis, 37 T.C. 1058 (1962). After closely reviewing all the facts and circumstances in the *199 matter before us, we hold that petitioners have met this burden. Francia possessed the requisite genuine expectation of realizing a profit from her horse operations and was therefore engaged in the trade or business of raising and breeding horses. We have made this determination on the basis of several factors which weigh in petitioners' favor. We have noted Francia's thorough knowledge of the type of horse she wished to raise, as well as her knowledge of the potential markets available for sale of this breed of horse. Irving C. Ackerman, 24 B.T.A. 512 (1931), aff'd 71 F.2d 586 (C.A. 9, 1934). Additionally, we have considered favorably Francia's hiring of and reliance on experienced and qualified help in the endeavor, Margaret E. Amory, 22 B.T.A. 1398 (1931). And similarly we view with favor petitioner's businesslike concern for the economics of the horse venture and her method of accounting for income and expenses. Wilson v. Eisner, supra.We think all of these factors are clearly indicative of a genuine profit motive. Respondent's position is that the venture did not constitute a trade or business. As indicative of this *200 he points to the record of losses by petitioners. We recognize that a history of losses over a period may be an important factor bearing on a taxpayer's true intentions; however, "the presence of losses in the formative years of a business, particularly one involving the breeding of horses, is not inconsistent with an intention to achieve a later profitable level of operation * * *". Margit Sigray Bessenyey, supra, at 274. For the years in question we feel that petitioner's raising and breeding activities were still in the formative years. [5] Accordingly, we do not consider the record of losses reported by petitioners to be indicative of a lack of intent to realize a profit. Therefore, for all the reasons stated above, we hold petitioners' horse operation to constitute a trade or business for purposes of the appropriate sections of the Internal Revenue Code of 1954. Accordingly the loss reported by petitioners on the sale of the horse High Pressure will be allowed. Decision will be entered for the petitioners. Footnotes
1. Respondent on brief has conceded that there is no deficiency for the taxable year 1970 due to the enactment of sec. 183 of the IRC of 1954↩ effective for taxable years beginning after December 31, 1969. 2. As previously indicated in footnote 1, respondent has conceded that there is no deficiency for the taxable year 1970 due to the enactment of sec. 183, of the IRC of 1954↩. 3. The question of the characterization of the loss on the sale of High Pressure is not before us; we merely determine whether or not the loss may be claimed by the petitioners. ↩
4. All section references are to the IRC of 1954, unless otherwise specified. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * * * * SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; * * * ↩
5. See also Morris A. Stoltzfus, T.C. Memo. 1970-337↩.